TM:RJN
F.#2011R00633

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - -X

UNITED STATES OF AMERICA

    - against -

JOSEPH IDA,
    also known as
    "Joe Cakes" and
    "Cakes,"

              Defendant.

- - - - - - - - - - - - - - - - -X

**M 12- 060**

AFFIDAVIT IN SUPPORT
OF ARREST WARRANT
(21 U.S.C. §§ 846 and
841(b)(1)(A)(ii)(II))

EASTERN DISTRICT OF NEW YORK, SS:

    FRANK ADAMO, being duly sworn, deposes and says that he is a Special Agent with the Drug Enforcement Administration, duly appointed according to law and acting as such.

    Upon information and belief, in or about and between 2008 and 2011, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant, JOSEPH IDA, also known as "Joe Cakes" and "Cakes," together with others, did knowingly and intentionally conspire to possess with intent to distribute a controlled substance, which offense involved over five kilograms of cocaine, a schedule II controlled substance, contrary to 21 U.S.C. § 841(a)(1).

    (Title 21, United States Code, Sections 846 and 841(b)(1)(A)(ii)(II))

The source of your deponent's information and the grounds for his belief are as follows:[1]

1. I am a Special Agent with the Drug Enforcement Administration ("DEA"). I have been a Special Agent with the DEA for approximately thirteen years. I am currently assigned to a DEA squad that investigates, among others, members and associates of the organized crime families of La Cosa Nostra ("LCN"), including their involvement in drug trafficking and drug-related homicides, and other associated illegal activities. During my tenure with the DEA, I have participated in investigations that have included, among other investigative techniques, the use of physical surveillance, execution of search warrants, consensual recordings of individuals associated with narcotics trafficking and other criminal activities, and debriefings of confidential sources and cooperating witnesses. Through my training, education and experience, I have become familiar with narcotics trafficking and other criminal activities and the efforts of persons involved in such activity to avoid detection by law enforcement.

2. I have participated in the investigation of the offenses described herein. As part of the investigation, I have conducted interviews of cooperating witnesses, reviewed reports

---

[1] Because the purpose of this Affidavit is to state only probable cause to arrest, I have not described all the relevant facts and circumstances of which I am aware.

2

of debriefings of witnesses by other law enforcement personnel, and reviewed reports by other investigative agencies. The statements contained in this affidavit are based, in part, on information provided by Special Agents of the DEA, other law enforcement personnel, confidential informants, cooperating witnesses and are also based on my experience and background as a Special Agent. All statements are provided in sum and substance and in part.

3. Among other duties, I have been participating in an investigation relating to the drug trafficking activities of JOSEPH IDA and his coconspirators. As discussed below, the investigation has revealed that, among his drug trafficking activities, IDA is involved in the distribution of cocaine in Staten Island, New York, and elsewhere.

### CRIMINAL HISTORY OF THE DEFENDANT

4. Based upon a review of law enforcement databases, including criminal history databases, JOSEPH IDA is a 36 year-old white male, who resides in Staten Island. On March 11, 1998, IDA was arrested in Staten Island, New York, on charges including attempted assault of a police officer with a deadly weapon and grand larceny. He pled guilty on July 14, 1998, to attempted criminal possession of stolen property and was sentenced to five years of probation. On September 6, 2007, IDA was arrested in New Jersey for charges including burglary and was sentenced to 90

days in prison. In 2010, an order of protection was entered against IDA prohibiting him from having contact with an individual.

5. A Cooperating Witness ("CW")[2] has advised that he has been involved with Keith Levine ("Levine"), Joseph Sclafani ("Sclafani") and others in the distribution of marijuana cultivated in several growing operations in Staten Island, New York, between approximately 2001 and 2011. In addition, CW has advised that he was involved, with various individuals, in the distribution of cocaine in Staten Island, New York, over that time period. Between approximately 2008 and 2011, CW was involved in cocaine distribution in Staten Island with Afrim Kupa ("Kupa"), Neil Lombardo ("Lombardo"), Sclafani and others.[3]

---

[2] CW has pled guilty pursuant to a cooperation agreement to an information charging him with his participation in marijuana and cocaine distribution, in violation of 21 U.S.C. §§ 846, 841(a)(1), 841(b)(1)(A)(ii)(II) and 841(b)(1)(A)(vii). CW is cooperating with the government in the hopes of obtaining leniency at sentencing and possible entry into the Witness Security Program. Information provided by CW has been corroborated by other sources of information, including but not limited to, consensual recordings, surveillance, documents, and information provided by other confidential sources and cooperating witnesses.

[3] In April 2011, Levine was indicted by a grand jury in the United States District Court, Eastern District of New York, for distribution and possession with intent to distribute marijuana and for conspiracy to distribute and possess with intent to distribute marijuana, in violation of 21 U.S.C. §§ 841(a), 841(b)(1)(A)(vii) and 846. In September 2011, Kupa, Lombardo and Sclafani were charged in a superseding indictment in the case pending against Levine with distribution and possession with intent to distribute five kilograms or more of cocaine, in

4

Together, Lombardo, Sclafani and CW distributed between four to eight kilograms of cocaine a month.

6. Between 2008 and 2010, CW and Sclafani each maintained separate customers, who in turn distributed the cocaine sold by CW and Sclafani. During that time, Sclafani advised CW that IDA, whose nickname was "Joe Cakes" because he had a business distributing baked goods, was one of Sclafani's regular customers (or dealers).

7. CW advised that several years after he began distributing drugs with Sclafani, Sclafani was arrested for violating the terms of his supervised release imposed pursuant to a prior conviction.[4] In approximately 2010, just prior to

---

violation of 21 U.S.C. §§ 841(a) and 841(b)(1)(A)(II)(ii), and conspiracy to distribute and possess with intent to distribute five kilograms or more of cocaine, in violation of 21 U.S.C. § 846. In addition, Sclafani was charged with Levine with distribution and possession with intent to distribute over 1,000 marijuana plants, in violation of 21 U.S.C. §§ 841(a) and 841(b)(1)(vii), and conspiracy to distribute and possess with intent to distribute over 1,000 marijuana plants, in violation of 12 U.S.C. § 846. <u>United States v. Afrim Kupa, Keith Levine, Neil Lombardo and Joseph Sclafani</u>, 11 CR 345 (SLT).

[4] On December 2, 1999, in <u>United States v. Joseph Sclafani</u>, 99 CR 1146 (ARR), Sclafani was charged in the United States District Court for the Eastern District of New York with racketeering, involving predicate acts of narcotics trafficking and bank fraud. He pled guilty on July 24, 2000, and was sentenced to 97 months' incarceration and four years of supervised release. He was charged with violating the terms of his supervised release after he was stopped by Kansas State Police on May 2, 2009, and found to be traveling with 15 cell phones and over $100,000, much of which was hidden in a false compartment in the rear bumper of the car. On January 1, 2010, he was sentenced to one year in prison for the violation.

5

Sclafani's incarceration for the violation of supervised release, Sclafani directed CW to continue the cocaine distribution operation during Sclafani's incarceration and to service Sclafani's cocaine customers. As a result, between approximately 2010 and 2011, CW sold cocaine to his own customers as well as to Sclafani's customers, including to IDA, among others. Prior to his incarceration, Sclafani advised CW that IDA was a good customer who purchased cocaine on a weekly basis.

8. CW advised that during the year Sclafani was incarcerated for the violation of his supervised release, CW sold IDA between 100 and 250 grams of cocaine each week.

9. After Sclafani was released from prison for the violation of his supervised release, Sclafani resumed cocaine sales to his customers, including IDA. Although CW stopped selling directly to Sclafani's customers, CW was aware of the quantities they purchased because CW and Sclafani met regularly to discuss the quantities purchased and money owed by customers of the cocaine distribution operation and to go over the drug ledgers they maintained. One of the drug ledgers, along with approximately 250 grams of cocaine, was seized during a search of Sclafani's residence in Staten Island, New York, on August 10, 2011, pursuant to a search warrant issued by the United States

District Court for the Eastern District of New York.[5] The ledger, which covers approximately February 2011 through July 2011, includes entries for an individual identified as "Cakes." CW has advised that IDA was identified as "Cakes," in the ledger because of his nickname. The ledger reflects that "Cakes" owed approximately $56,013 for several cocaine transactions. Based on my analysis of the entries in the ledger and on my debriefing of the CW regarding, among other things, the entries in the ledger and the amount IDA was charged per gram of cocaine, it is my understanding that the ledger reflects that IDA owed $56,013 for approximately 1.5 kilograms of cocaine. CW has advised that this ledger may not reflect the full amount of cocaine sold to IDA during this time frame because Sclafani was not consistent about updating the ledger to ensure that it reflected the full amount of the cocaine sold to their customers.

10. The information provided by CW is corroborated by information provided by another coconspirator ("CS").[6] CS

---

[5] Agents did not locate any other drug ledgers during the search.

[6] CS was recently arrested by the DEA pursuant to a complaint that charged him with his participation in marijuana and cocaine distribution, in violation of 21 U.S.C. §§ 846, 841(a)(1), 841(b)(1)(A)(ii)(II) and 841(b)(1)(A)(vii). CS has agreed to be debriefed about his knowledge of criminal activities and to consensually record others engaging in criminal conduct. CS is in a position to testify but has not yet signed an agreement to testify. CS is seeking to cooperate with the government in the hopes of obtaining leniency at sentencing and possible entry into the Witness Security Program. Information

7

advised that between approximately 2001 and 2011, he was involved with CW and others in the distribution of marijuana and cocaine in Staten Island, New York. Between 2008 and 2011, CW and Sclafani provided CS with a regular supply of cocaine.

11. CS advised that based on his conversations with CW prior to CW's arrest, CS understood that IDA purchased cocaine from CW and Sclafani on a regular basis. On November 21, 2011 and November 22, 2011, CS consensually recorded conversations with IDA in which IDA advised CS, in sum and substance, that he was still involved in the distribution of cocaine, despite the arrest of CW and Sclafani, who were his primary suppliers. During the recorded conversation, IDA explained that if CS wanted to purchase cocaine, IDA could sell it to him. IDA identified his supplier as an individual named "Carmen." IDA explained that he met "Carmen" through "Joe." CS understood IDA to be referring to Carmen Martucci and Joseph Sclafani.[7] IDA told CS during the

---

provided by CS has been corroborated by other sources of information, including but not limited to, consensual recordings, documents and information provided by other confidential sources and cooperating witnesses.

[7]    CS's understanding is corroborated by CW, who has advised that Martucci was one of Sclafani's regular cocaine customers. Martucci is also identified in the drug ledger seized during the search executed by the DEA at Sclafani's residence discussed above in paragraph 9. Moreover, Martucci was present in the car with Sclafani when they were arrested by Kansas State Police on May 2, 2009, as described above in footnote 4.

8

recorded conversation on November 22, 2011, that Carmen has refused to introduce IDA to his supplier.

WHEREFORE, your deponent respectfully requests that a warrant be issued for the arrest of the defendant JOSEPH IDA, also known as "Joe Cakes" and "Cakes," so that he may be dealt with according to law. I further request that this affidavit and the arrest warrant be filed under seal as disclosure of this application would give the targets of the investigation an opportunity to destroy evidence, harm or threaten victims or other witnesses, change patterns of behavior, notify confederates and flee from or evade prosecution.

Dated:  Brooklyn, New York
        January /𝟤, 2012

_____
FRANK ADAMO
Special Agent
Drug Enforcement Administration

Sworn to before me this
/𝟪 day of January, 2012

_____
THE HONORABLE CHERYL L. POLLAK
UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF NEW YORK

9